IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC., | ) ) ) | CIVIL NO. 16-00008 JMS-KSC |
| Plaintiff, | ) ) ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS |
| vs. | ) ) ) | |
| CENTERS FOR DISEASE CONTROL AND PREVENTION, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES AND COSTS

Before the Court is Plaintiff Civil Beat Law Center for the Public Interest's ("Plaintiff") Motion for Attorney's Fees and Costs, filed September 13, 2016. Plaintiff filed a Statement of Consultation on September 23, 2016. On October 7, 2016, Defendant Centers for Disease Control & Prevention ("CDC") filed an Opposition. Plaintiff filed a Reply on October 21, 2016. At the Court's direction, the CDC filed a Supplemental Memorandum on January 10, 2017.

After careful consideration of the parties' submissions, the Court HEREBY RECOMMENDS that the

Motion be GRANTED IN PART AND DENIED IN PART and that the district court award Plaintiff **$17,710.40** in attorneys' fees and **$553.93** in costs.

<u>BACKGROUND</u>

On April 24, 2015, Plaintiff submitted a Freedom of Information Act ("FOIA") request to the CDC for records related to the CDC's inspection of University of Hawaii ("UH") laboratories.  In particular, Plaintiff requested:  1) a May 12, 2014 letter from Robbin Weyant to John Galland and 2) a May 12, 2014 inspection report with an attachment for UH.

The CDC acknowledged the request on April 30, 2015, and on May 5, 2015, it denied the request, notifying Plaintiff that the records were being withheld under FOIA Exemption 3.

On May 11, 2015, Plaintiff appealed the CDC's denial.  The Department of Health and Human Services ("DHHS") denied Plaintiff's administrative appeal on November 24, 2015.

On January 7, 2016, Plaintiff commenced this

action, alleging that Defendant violated FOIA by denying access to the inspection report and related letter for the CDC's May 2014 inspection of the UH facilities that use biotoxins.  Plaintiff requested that the CDC be ordered to provide access to the aforesaid documents.

On May 11, 2016, the CDC moved for summary judgment, asserting that it properly withheld the requested records.  Plaintiff countermoved for summary judgment on June 23, 2016.

On July 5, 2016, the CDC produced redacted versions of the requested records in support of its summary judgment motion to demonstrate that the substantive portions of the documents fell within FOIA Exemptions 3 and 6 and the non-disclosure provisions of the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (the "Act").

On August 30, 2016, U.S. District Judge J. Michael Seabright entered an Order (1) Granting in Part and Denying in Part Defendant's Motion for Summary Judgment and (2) Granting in Part and Denying in Part

3

Plaintiff's Counter-Motion for Summary Judgment ("SJ Order").  Judge Seabright ruled, in pertinent part, as follows:

- "[T]he court finds that the CDC properly redacted the Documents pursuant to Exemption 3 and the Act." SJ Order at 33.

- With respect to the CDC's invocation of Exemption 6 to redact names and contact information of Office of Public Health and Preparedness Response, Division of Select Agents and Toxins ("OPHPR/DSAT") personnel identified with the subject documents, "the CDC properly invoked Exemption 6 in response to Plaintiff's request."  Id. at 34, 36.

- Because the CDC conceded that redactions on PageID# 296 based on Exemption 6 were made in error due to inadvertent mistake, "the CDC is ordered to produce to Plaintiff that page without the inappropriate redactions no later than September 12, 2016."  Id. at 36-37.

- In response to Plaintiff's request for an order 1) declaring that the CDC violated FOIA by withholding all documents as non-segregable and 2) requiring the CDC to disclose all non-exempt information:

    The CDC's approach to this case could certainly have been more focused: the CDC belatedly claimed Exemption 6 and the CDC also overzealously redacted PageID# 296. Additionally, the court agrees that the CDC should promptly produce a properly-redacted version of PageID# 296.  But lack of focus is not, in and of itself, a FOIA violation.  *See Yonemoto*, 686 F.3d at 689 (explaining that "the production of all

4

nonexempt material, however belatedly,
moots FOIA claims") (internal quotation
marks omitted).

Id. at 37.

In sum, Judge Seabright granted Plaintiff's
counter-motion with respect to Plaintiff's request for
the names of two federal employees redacted from a
previously published CDC policy.  Judge Seabright
otherwise determined that the CDC's production of the
redacted records sufficiently resolved the FOIA issues.

Judgment issued the same day as the SJ Order.

The present Motion followed.

<u>LEGAL STANDARD</u>

Section 552(a)(4)(E) provides:

(i) The court may assess against the
United States reasonable attorney fees and
other litigation costs reasonably incurred
in any case under this section in which
the complainant has substantially
prevailed.

(ii) For purposes of this subparagraph, a
complainant has substantially prevailed if
the complainant has obtained relief
through either--

(I) a judicial order, or an enforceable
written agreement or consent decree; or

5

> (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E).   To determine whether Plaintiff may recover fees and costs, the Court engages in a two-part analysis.   The Court first determines whether Plaintiff is <u>eligible</u> to an award and second, whether Plaintiff is <u>entitled</u> to an award.   <u>Hiken v. Dep't of Defense</u>, 836 F.3d 1037, 1043 (9th Cir. 2016) (citing <u>Church of Scientology of Cal. v. U.S. Postal Serv.</u>, 700 F.2d 486, 489 (9th Cir. 1983)).

> To be eligible for an award of attorney's fees in a FOIA suit, the plaintiff must present convincing evidence that two threshold conditions have been satisfied. . . . : (1) the filing of the action could reasonably have been regarded as necessary to obtain the information; and (2) the filing of the action had a *substantial causative* effect on the delivery of the information.

<u>Church of Scientology</u>, 700 F.2d at 489.   "A determination of eligibility does not automatically entitle the plaintiff to attorney's fees."   <u>Id.</u> Rather, a party's entitlement to fees "is within the sound discretion of the trial court."   <u>Hiken</u>, 836 F.3d

at 1044.

In exercising their discretion, district courts must consider:  "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law."  Id. (quoting Long v. IRS, 932 F.2d 1309, 1313 (9th Cir. 1991)) (quotations omitted).

<u>ANALYSIS</u>

Plaintiff requests $19,442.00 in attorneys' fees and $553.93 in costs pursuant to 5 U.S.C. § 552(a)(4)(E), asserting that it substantially prevailed because the CDC voluntarily disclosed non-exempt portions of the requested inspection records in connection with the dispositive motions briefing process.  Plaintiff submits that in addition to being eligible for a fee award, it is entitled because: 1) the public will benefit; 2) it has no pecuniary interest in the requested records; 3) it brought this

7

lawsuit in the interest of general public interest access to CDC inspection records; 4) the CDC had no basis for withholding the requested records in their entirety.

The CDC counters that Plaintiff is not eligible for fees and costs because it did not substantially prevail on any claim.  The CDC also challenges Plaintiff's entitlement to fees, arguing that the voluntary production of the requested documents did not confer a public benefit and Judge Seabright ruled that the CDC had a reasonable basis for withholding the requested documents.

A.   Plaintiff is Eligible for Fees

Plaintiff contends that it substantially prevailed because the CDC voluntarily and unilaterally changed its position to disclose records.[1]  The CDC maintains that this action did not serve as a catalyst

---

[1]   Plaintiff does not argue that it is eligible pursuant to the judicial order theory.  Thus, the Court limits its discussion to the catalyst theory; that is, whether this litigation caused the CDC to produce the requested documents.

8

for the disclosure of documents or for any change in the CDC's policy regarding the application of FOIA Exemption 3 and the nondisclosure provisions of the Act. The CDC characterizes its submission of redacted records as an effort to demonstrate to Judge Seabright that the substantive portions of the responsive documents fell within the protections of Exemptions 3 and 6.

As earlier noted, to determine whether Plaintiff has substantially prevailed, the Court must determine 1) whether this action was reasonably necessary to obtain the requested records and 2) whether this action had a substantial causative effect on the release of the records. Church of Scientology, 700 F.2d at 490. "The mere fact that the information sought was not released until after the lawsuit was initiated is insufficient to establish that a complainant has 'substantially prevailed.'" Id. at 491 (citation omitted). Conversely, the voluntary release of documents by a defendant does not preclude an award of attorneys' fees to the plaintiff. Id.

9

(citation omitted).

When disclosure of documents is triggered by events unrelated to the pending lawsuit, a causal nexus is lacking and a plaintiff cannot be deemed a prevailing party. <u>Electronic Privacy Info. Ctr. v. United States</u>, Civil Action No. 12-0333(GK), 2016 WL 6879251, at *8 (D.D.C. Nov. 21, 2016). "Eligibility . . . attaches only when the lawsuit begets disclosure." <u>Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice</u>, 83 F. Supp. 3d 297, 303 (D.D.C. 2015), <u>overruled on other grounds as recognized in Nat'l Security Counselors v. CIA</u>, 811 F.3d 22, 29 (D.C. Cir. 2016); <u>Church of Scientology of Cal. v. Harris</u>, 653 F.2d 584, 588 (D.C. Cir. 1981) (citation and quotation omitted) (If "either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit").

Courts consider the following in determining if

10

extrinsic factors, rather than a plaintiff's lawsuit, caused the agency's release of documents:  "(1) 'whether the agency made a good faith effort to search out material and pass on whether it should be disclosed'; (2) 'whether the scope of request caused delay in disclosure'; (3) 'whether the agency was burdened with other duties that delayed its response.'" Electronic Privacy, 2016 WL 6879251, at *8 (citation omitted); Church of Scientology, 700 F.2d at 492 ("[T]he district court should consider the following factors in determining whether the Church has substantially prevailed: (1) when the documents were released; and (2) what actually triggered the documents' release to the Church; and (3) whether the Church was entitled to the documents at an earlier time in view of the fact that the exemption . . . was eliminated.").

Here, after considering the foregoing factors, the Court finds that the lawsuit was the necessary catalyst for the attainment of the requested documents. Plaintiff submitted a FOIA request for the two

11

documents that are the subject of this action on April 24, 2015.   The CDC acknowledged receipt of the request on April 30, 2015, then on May 5, 2015, notified Plaintiff that it was withholding all documents.   Based on this timeline, the CDC was clearly able to expeditiously locate the two documents and reach a decision about the propriety of production/disclosure. The narrow and specific request did not cause any meaningful delay, nor did the purported backlog that the CDC was facing at the time.

Even accepting as true the CDC's claim that it was burdened with an extensive backlog and lack of resources when Plaintiff submitted its FOIA request,[2] a

---

[2]   The CDC also argues that Judge Seabright recognized that this case presented an unusual set of circumstances in that the FOIA request sought two specifically identified documents.   Supp. Mem. at 3 (citing SJ Order at 30).   Judge Seabright did not make such a finding.   In disagreeing with Plaintiff's contention that the CDC sought a blanket rule that any information about regulatory deficiencies is exempt under the security exception, Judge Seabright noted that "the CDC never asked for a 'blanket rule.'

To the contrary, the CDC has repeatedly emphasized that this case presents an 'unusual set of facts.'"   SJ

backlog/lack of resources did not preclude the CDC from locating and making a determination as to the withholding of the documents.  Indeed, the CDC affirmatively declined to produce the requested documents.  After locating the subject documents (consisting of 18 pages), the CDC, in consultation with OPHPR/DSAT, and the CDC Branch of the Department of Health and Human Services Office of General Counsel, determined that the documents were exempt from disclosure and that they "were not reasonably segregable or amenable to partial redaction because the exempt information was so inextricably intertwined with the non-exempt information contained in the records." SJ Order at 6 (citation and quotations omitted).  The CDC maintained this position throughout the administrative appeal and took no steps to produce any portion of the subject documents until the briefing process for the motions for summary judgment.

---

Order at 30.

Bruno Viana, Acting Deputy FOIA Officer for the
CDC, essentially conceded that this litigation was the
catalyst that caused the CDC to change its position
from complete withholding of the subject documents to
production of redacted copies.  In response to an
inquiry by Judge Seabright about "[w]hy the CDC
initially viewed the two responsive documents as
non-segregable, but later produced redacted copies of
the documents," Mr. Viana stated:

> **At the behest of legal counsel, the CDC
> FOIA Office prepared a set of redacted
> documents as a part of its Reply to
> Plaintiff's Counter-Motion.**  This draft set
> of redacted documents was reviewed by
> attorneys from the DHHS' Office of General
> Counsel ("OGC") and the Department of
> Justice ("DOJ").  The CDC conducted a
> careful and thorough process of re-
> reviewing and redacting the documents, and
> as a result, submitted the set of redacted
> documents (Defendant's Exhibits 1-2) to the
> Court and Plaintiff in a good faith attempt
> to show the Court that the substantive
> portions of the responsive documents fell
> within the protections of the Act and that
> the remaining unredacted portions of
> Defendant's Exhibits 1-2, while maybe not
> literally meaningless, contained little or
> no useful informational content or simply
> reflected regulatory or programmatic
> guidance that is available on the FSAP's

public website.

Doc. 31-1 at ¶¶ 3, 7 (emphasis added).  Therefore, the lawsuit, not extrinsic factors, caused the CDC to release redacted versions of the subject documents following the commencement of this action.[3]

The CDC argues that the only reason it provided redacted copies of the subject documents was to make a good faith effort to demonstrate that the substantive portions of the document fell within the protections of FOIA Exemptions 3 and 6.  It explains that it "submitted Defendant's Exs. 1-2 in an effort to graphically illustrate this point, and to provide the Court with a more detailed description of the scope and nature of the exempted information and citations to the particular FOIA exemption(s) justifying each redaction."  Opp'n at 9.  This argument actually

---

[3] The Court finds unpersuasive the CDC's argument that this action did not change its policy regarding the application of FOIA Exemption 3 and the non-disclosure provisions of the Act.  The catalyst theory does not require a formal change in agency policy.  The germane inquiry here is the circumstances that lead to the release of the relevant documents.

15

supports a finding of eligibility.  Although the CDC maintains that Plaintiff did not obtain any of the relief sought in this litigation, redacted copies of the subject documents are precisely what Plaintiff hoped to procure from the outset.

In denying Plaintiff's FOIA request, the CDC specifically considered whether the documents were amenable to partial redaction and concluded that the documents must be withheld in their entirety.  That the CDC's change in position can be attributed to its desire to provide examples to Judge Seabright does not transform the disclosure into something other than production of the documents in a form Plaintiff was always willing to accept.  Consequently, any claim by the CDC that Plaintiff did not obtain the relief sought in the Complaint is disingenuous.

To support a finding of non-eligibility, the CDC repeatedly asserts that Judge Seabright found that its invocation of Exemptions 3 and 6 were justified. However, Judge Seabright never concluded that a withholding of the documents in their entirety was

16

warranted.  His analysis focused on the redactions made by the CDC, and whether those redactions were appropriate under the provisions it invoked.  SJ Order at 27 ("Thus, when the CDC produced the Documents it appropriately reacted references to the location of the specific registered person (*i.e.*, the location of the inspected facility) based on its articulated determination that public disclosure would endanger public health or safety.").

Judge Seabright in fact commented that "while the CDC may not have initially undertaken a sufficiently detailed approach to the Documents, it subsequently 'conducted a careful and thorough process of reviewing and redacting the documents.'"  Id. at 30. It was the multiple sets of declarations/submissions, taken in their totality, that led Judge Seabright to conclude that the CDC took "a particularized approach to the Documents at issue in this case."  Id. at 31. But again, the sufficiently particularized approach concerned the redactions, not the complete withholding of the documents.  Id. at 32 ("In light of the

17

foregoing, the court finds that the CDC properly redacted the Documents pursuant to Exemption 3 and the Act."); <u>id.</u> at 36 ("[T]he court observes that this particularized information the CDC redacted pursuant to Exemption 6 is distinguishable from the generic website directories referenced in Plaintiff's Reply . . . . As such, the Documents provide substantially more context than a generic website directory, and the CDC properly invoked Exemption 6 in response to Plaintiff's request.").

Based on the foregoing, Judge Seabright never concluded that the CDC's reliance on Exemption 3 and the Act justified its initial denial of Plaintiff's request.  As a result of this litigation, Plaintiff obtained redacted versions of the subject documents, and this action had a substantial causative effect on the release of the records.  The Court accordingly finds that Plaintiff substantially prevailed and is eligible for a fee award.

B.   <u>Plaintiff is Entitled to a Fee Award</u>

Having found that Plaintiff is eligible for an

18

award of fees, the Court must now ascertain whether Plaintiff is entitled to the same.  In doing so, the Court must consider:  "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law."[4]  Hiken, 836 F.3d at 1044; Morley v. CIA, 810 F.3d 841, 842 (D.C. Cir. 2016).  This list is not exhaustive and district courts "may take into account 'whatever factors it deems relevant in determining whether an award of attorneys' fees is appropriate.'"  Church of Scientology, 700 F.2d at 492 (citation omitted).

  1.  Public Benefit From Disclosure

     In weighing this factor, "the district court should take into account the degree of dissemination and the likely public impact that might result from

_____

     [4]  The CDC primarily challenges Plaintiff's entitlement to fees based on factors one and four, and it has not presented arguments as to factors two and three.

disclosure." Id. at 493.  The fact that a plaintiff prevailed may be taken into consideration, and a ruling "that the government may not withhold certain information pursuant to a particular FOIA exemption . . . benefits the public." Id.

"When determining the public benefit, a court 'evaluate[s] the specific document at issue in the case at hand' and determines whether the plaintiff's lawsuit 'is likely to add to the fund of information that citizens may use in making vital political choices.'" Electronic Privacy, 2016 WL 6879251, at *11 (quoting Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995)) (alteration in original).  As part of this evaluation, courts should "assess 'the potential public value' of the information sought, and not the 'public value of the information received.'" Id. (quoting Morley, 810 F.3d at 844).

Plaintiff argues that it brought this action to enforce the disclosure obligations outlined in the Act; that until it filed suit, the CDC ignored its obligations by withholding documents in their entirety.

20

Plaintiff explains that it has also published the redacted records and related pleadings from this action on its website to educate others who may seek similar inspection records from the CDC.

The CDC counters that the production of a single page of a single contested document to correct inadvertent redactions of the names of two federal employees that were already posted on a public website did not confer a public benefit. Not only is this a mischaracterization of what was obtained through this litigation,[5] it is irrelevant to the applicable test, which focuses on the value of the information sought, not the value of the information received.

> [T]he public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with

---

[5]   The fact that Judge Seabright's ruling in Plaintiff's favor was limited to the disclosure of two employees' identities due to inadvertent redactions does not eliminate any public benefit. "A ruling which establishes that the government may not withhold certain information pursuant to a particular FOIA exemption, in our view, benefits the public." Church of Scientology, 700 F.2d at 493. Because the relief obtained by Plaintiff via judicial order was limited, this fact is not dispositive.

>little or no regard to whether any document
>supplied prove to advance the public
>interest.  We can imagine a rare case where
>the research harvest seemed to vindicate an
>otherwise quite implausible request.  But
>if it's plausible *ex ante* that a request
>has a decent chance of yielding a public
>benefit, the public-benefit analysis ends
>there.

Morley, 810 F.3d at 844.  For a request to be of

potential public value, it "must have at least a modest

probability of generating useful new information about

a matter of public concern."  Id.

In considering this factor, the Court assesses

the potential public value of the information

requested:  documents relating to the inspection of

UH's biotoxin facilities.  Whether or not UH is in

compliance with regulatory requirements concerning the

access to and handling of select agents is certainly a

matter of public concern, and would arguably add to the

fund of information that citizens may use in making

vital political choices.  The Sierra Club v. United

States Envtl. Prot. Agency, 75 F. Supp. 3d 1125, 1143

(N.D. Cal. 2014) ("Plaintiffs' effort to inform the

public of pollutants exposed to the air by noncompliant

companies undoubtedly confers a benefit on the public."). One of Plaintiff's purposes is to "[a]dvanc[e] the public's rights by investigating questionable government activity, advocating for corrective action, and, if needed, enforcing corrective measures in the courts," www.civilbeatlawcetner.org, (last visited Jan. 31, 2017), and Plaintiff's efforts to enforce the CDC's disclosure obligations in this action provided a public benefit. Sierra Club, 75 F. Supp. 3d at 1143 ("Given the purpose of Plaintiffs' organizations to oversee and enforce compliance with the [Clean Air Act], the Court finds that Plaintiffs provide a significant public benefit.").

What is more, Plaintiff has published the redacted records and related pleadings from this action on its website. www.civilbeatlawcenter.org/case/cdc (last visited Jan. 31, 2017); Sierra Club, 75 F. Supp. 3d at 1143-44 ("[T]he Court finds Plaintiffs' failure to disseminate the documents they obtained is not dispositive in determining whether their efforts served a public benefit. . . . even if they have not publicly

23

posted each of the 44,000 pages of documents obtained in this litigation, it is evident that the data they contain is being used to inform Plaintiffs' ongoing oversight and enforcement efforts.").

The CDC asserts that because the disclosed information was already in the public domain, this factor weighs against a fee award. "[W]hether documents are already in the public domain is significant because it undermines any claim that the requester's use of FOIA had provided public access to the documents." Morley, 810 F.3d at 845. The CDC cannot legitimately argue that the unredacted portions of the documents were already in the public domain because Mr. Viana represented that the process for ascertaining whether any of the subject documents' content was segregable or non-exempt was complicated. If the unredacted information was already in the public domain, it could have readily been disclosed when Plaintiff submitted its FOIA request. The unredacted portions of the records do not merely consist of regulatory or programmatic guidance that is available

24

on FSAP's public website; they reveal the dates on which an inspection occurred and some of the problems identified during that inspection.  Accordingly, the Court finds that the public benefit factor weighs in Plaintiff's favor.

>    2.   <u>Commercial Benefit to Plaintiff and the Nature of Plaintiff's Interest in the Records</u>

The second factor, commercial benefit to the plaintiff, and third factor, the nature of the plaintiff's interest in the records, are often construed together.  <u>Church of Scientology</u>, 700 F.2d at 494; <u>Electronic Privacy</u>, 2016 WL 6879251, at *11. Taken together, these factors assess "whether the plaintiff has a 'sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it.'"  <u>Electronic Privacy</u>, 2016 WL 6879251, at *11.

Pursuant to the second factor, recovery of fees would ordinarily be allowable "where the complainant was indigent or a nonprofit public interest group . . . but would not if it was a large corporate interest (or

a representative of such an interest)." Church of
Scientology, 700 F.2d at 492 n.6 (quoting S. Rep. No.
93-854, 93rd Cong. 2nd Sess. 19 (1974) (comments of Mr.
Kennedy from the Committee on the Judiciary)).
Similarly, under the third factor, recovery would
ordinarily be permissible "if the complainant's
interest in the information sought was scholarly or
journalistic or public-interest oriented, but . . . not
. . . if his interest was of a frivolous or purely
commercial nature." Id.

Plaintiff argues that it has no pecuniary
interest in the subject documents, nor any commercial
or personal interest in contesting the CDC's denial of
its FOIA request. Plaintiff additionally submits that
it brought this action solely to enforce the standards
set forth in the Act, and in furtherance of general
public access to CDC inspection records.

The Court finds that factors two and three
weigh in favor of Plaintiff's entitlement to fees
because Plaintiff is a Hawaii nonprofit corporation and
its interest in the requested documents was public-

26

interest oriented, as opposed to a commercial endeavor.

   3.   <u>Reasonableness of the CDC's Withholding of the
        Subject Documents</u>

        Finally, the Court considers the reasonableness
of the CDC's withholding of the subject documents.  A
"court would not award fees where the government's
withholding had a colorable basis in law but would
ordinarily award them if the withholding appeared to be
merely to avoid embarrassment or frustrate the
requester."  <u>Church of Scientology</u>, 700 F.2d at 492 n.6
(citation omitted).  Two factors are considered in this
analysis:  1) "whether the agency's opposition to
disclosure 'had a reasonable basis in law'" and
2) "whether the agency was 'recalcitrant in its
opposition to a valid claim or otherwise engaged in
obdurate behavior.'"  <u>Electronic Privacy</u>, 2016 WL
6879251, at *12 (citations and internal quotations
omitted).  "If the Government's position is correct as
a matter of law, that will be dispositive.  If the
Government's position is founded on a colorable legal
basis in law that will be weighed along with other

27

relevant considerations in the entitlement calculus."

Id. (quoting Davy v. CIA, 550 F.3d 1155, 1162 (D.C.

Cir. 2008)) (quotations omitted).

The agency bears the burden of demonstrating

that its actions were reasonable and the relevant

inquiry is "whether the agency has shown that it had

any colorable or reasonable basis for not disclosing

the material until after [the Plaintiff] filed suit."

Id. (alteration in original) (citation and quotations

omitted).

The CDC argues that it had a reasonable basis

in law for withholding the requested records given

Judge Seabright's ruling that it had properly withheld

the requested information under FOIA Exemptions 3 and

6.  As discussed in section A, Judge Seabright never

concluded that the CDC properly withheld the subject

documents in their entirety.  His decision pertained to

the applicability of Exemptions 3 and 6 and the

appropriateness of the corresponding redactions based

on the CDC's submission of the redacted documents and

multiple rounds of declarations.  Thus, while the

redactions made pursuant to Exemptions 3 and 6 and the Act may ultimately have been correct as a matter of law, it does not necessarily follow that the CDC's denial of the request in full was proper, and this factor is not dispositive of the Court's entitlement inquiry.[6]

During the course of this litigation, Mr. Viana made the following representations about why the CDC withheld the subject documents:

> 5.   This case presents the first time that the CDC's withholding of information under FOIA Exemption 3 and the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, 42 U.S.C. § 262a (the "Act"), has been challenged in litigation.  Applying the non-disclosure provisions of the Act to particular select agent documents is not a simple process and requires a certain level of knowledge and understanding of the select agent regulations and the

---

[6]   The cases relied upon by the CDC are distinguishable because they involved situations where the agency's decision to withhold entire documents was correct as a matter of law.  See, e.g., Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 523, 528 (D.C. Cir. 2011) (affirming decision that the plaintiff was not entitled to fees "because the defendant's decision to withhold the Agreement was correct as a matter of law").

workings of the Federal Select Agent Program ("FSAP") in order to appropriately determine what information should be withheld and what information an be disclosed.

6. The CDC's application of the non-disclosure provisions of the Act in the context of this case was further complicated by its unusual set of facts. Here, Plaintiff disclosed the identity and location of a particular registered entity and sought two specifically identified select agent records relating to that registered entity -- the May 12, 2014 inspection report and the May 12, 2014 show cause letter. Upon review of the responsive documents, the CDC determined that a "Glomar Response"[] was not appropriate in this case, and that it consequently was required to acknowledge its possession of two select agent documents that were responsive to Plaintiff's request. By merely acknowledging the existence of responsive documents, the CDC was not making an official disclosure of any exempt information contained in those documents and did not waive any of the non-disclosure provisions of the Act. As the disclosure of any information contained in the responsive documents would be associated with the registered entity identified by Plaintiff, the CDC FOIA Office took extreme precaution in reviewing the documents and applying the nondisclosure provisions of the Act. As a consequence, the CDC FOIA Office initially took the position that the responsive documents were protected in their entirety by 42 U.S.C.

§ 262a(h)(1)(C) and (E), and were not
reasonably segregable because any
non-exempt information was inextricably
intertwined with exempt information. . .
.

. . . .

8.  The process of applying the non-
disclosure provisions of 42 U.S.C.
§ 262a(h)(1) to the responsive
documents, under the unique facts of
this case, was not a simple, clerical or
ministerial action.  To the contrary,
the determination of what information
was non-exempt and reasonably segregable
in this case was a complex matter in
which reasonable people could differ and
required input from CDC and DSAT staff
who had experience working in or with
the FSAP and possessed a practical
understanding of the FSAP, its governing
select agent regulations and policies,
the nature of select agent research, and
the CDC's role as an FSAP regulator.

Doc. No. 31-1 at ¶¶ 5, 6, & 8.  Based on the

circumstances presented in this case, the Court finds

that the CDC's decision to withhold the documents was

founded on a colorable basis in law.

       Addressing the second factor in the analysis,

the Court finds that the withholding was not due to

recalcitrance or obdurate behavior on the part of the

CDC.  The CDC has explained the complexities of

31

ascertaining what information was non-exempt and segregable.  When coupled with Judge Seabright's determination that Exemptions 3 and 6 and the Act justified the redactions, it is clear that the decisions concerning the redactions involved multiple individuals with specialized knowledge.  Consequently, any delays in the redaction process were reasonably necessary.  Plaintiff has not presented any evidence to suggest that the CDC has not been forthright with their representations.  For these reasons, the Court finds that factor four favors the CDC.

In sum, factors one through three weigh in Plaintiff's favor, and the Court therefore concludes that Plaintiff is not only eligible for, but also entitled to, an award of fees.

C.   <u>Fee Award</u>

The Court must now evaluate the reasonableness of the fee request.  "[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees, the award must be given and the only room for discretion concerns the reasonableness of the

amount requested." Long, 932 F.2d at 1314 (citations omitted).  If the requested hourly rate and the hours expended are reasonable, "there is a 'strong presumption' that their product, the lodestar figure, represents a reasonable award." Id. (citations and internal quotations omitted).  Courts may adjust the lodestar "if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." Id. at 1314 (citation omitted).

1. Hourly Rate

Plaintiff requests a $260 hourly rate for Brian Black's attorney tasks and a $100 hourly rate for his paralegal tasks.  The CDC does not contest the reasonableness of the hourly rates.

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account. See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community. See id.;

33

Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir.
1992), as amended on denial of reh'g, (1993) (noting
that the rate awarded should reflect "the rates of
attorneys practicing in the forum district").  It is
the burden of the fee applicant to produce satisfactory
evidence, in addition to an affidavit from the fee
applicant, demonstrating that the requested hourly rate
reflects prevailing community rates for similar
services.  See Jordan v. Multnomah County, 815 F.2d
1258, 1263 (9th Cir. 1987).  Based on its knowledge of
the rates awarded in this district and the information
provided by counsel, the Court finds that the requested
hourly rates are manifestly reasonable.

   2.  Hours Expended

      Beyond establishing a reasonable hourly rate, a
prevailing party seeking attorneys' fees bears the
burden of proving that the fees are associated with the
relief requested and are reasonably necessary to
achieve the results obtained.  See Tirona v. State Farm
Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw.
1993) (citations omitted).  Courts must guard against

34

awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. Id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987), cert. denied, 484 U.S. 927 (1987)). This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. See Gates, 987 F.2d at 1399 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)).

Plaintiff represents that it exercised billing judgment in recognition of its partial success and reduced its fee request accordingly. The CDC argues that the Court should significantly reduce Plaintiff's requested hours: $6,924 for specific time entries then application of a 90% reduction to the remaining fees.[7]

---

[7] Applying these proposed reductions would result in a fee award of $1,251.80.

The Court declines to impose the reductions proposed by the CDC. First, the basis for $2,634 of the requested reduction is that Plaintiff claimed to have adjusted billing records to exclude time entries for motions practice after the CDC released records on July 5, 2016. However, the billing records that the CDC seeks to exclude were not categorized as "motions practice", with the exception of one entry (7/18/16 – "File and provide courtesy copies for position statement").[8]

Second, the Court finds it inappropriate to reduce the requested fees by 90%. As the Court discussed in the eligibility section, even if Judge Seabright did not order the release of records, Plaintiff substantially prevailed because the commencement of this action was the catalyst for the release of the redacted records. In addition, Plaintiff already made reductions to the request. Accordingly, other than the reductions imposed below,

---

[8] As detailed later, this entry will be excluded because the task is clerical.

the Court will not apply a blanket percentage reduction to Plaintiff's fee request.

a.  Clerical

Counsel billed for tasks that have been identified as clerical in this district.  "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."  HRPT Props. Trust v. Lingle, 775 F. Supp. 2d 1225, 1241 (D. Haw. 2011) (alteration in original) (citations and quotations omitted).  The following is a list of tasks previously deemed clerical or ministerial in this district and are therefore non-compensable:

> reviewing Court-generated notices;
> scheduling dates and deadlines;
> calendering dates and deadlines; notifying
> a client of dates and deadlines; preparing
> documents for filing with the Court;
> filing documents with the Court; informing
> a client that a document has been filed;
> personally delivering documents; bates
> stamping and other labeling of documents;
> maintaining and pulling files; copying,
> printing, and scanning documents;
> receiving, downloading, and emailing
> documents; and communicating with Court
> staff.[9]

---

[9]  This list is a sampling and is not exhaustive.

37

<u>Haw. Motorsports Inv., Inc. v. Clayton Grp. Servs.,</u>

<u>Inc.</u>, Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5

(D. Haw. Dec. 1, 2010), <u>adopted by</u> 2010 WL 5395669 (D.

Haw. Dec. 22, 2010) (also deeming clerical

identification and organization of exhibits);[10] <u>see</u>

<u>also</u>, <u>e.g.</u>, <u>Yamada v. Weaver</u>, Civil No. 10-00497

JMS-RLP, 2012 WL 6019363, at *10 (D. Haw. Aug. 30,

2012), <u>adopted in pertinent part by</u> 2012 WL 6019121 (D.

Haw. Nov. 30, 2012) (deeming clerical work completed on

table of authorities).

Counsel billed for a number of clerical tasks

such as preparing/filing/sending documents, scheduling,

and preparing exhibits.[11]  In most instances, these

---

[10]  Although selecting exhibits to be used in a case
is a legal task, simple review and/or organization
is clerical.  <u>I.T. v. Dep't of Educ., Haw.</u>, 18 F. Supp. 3d
1047, 1054 (D. Haw. 2014).

[11]  The limited description accompanying Mr. Black's
(paralegal) 6/8/16 and 6/10/16 time entries (under
motions practice - "Prepare declaration and exhibits"),
for example, precludes the Court from determining
whether he was selecting exhibits or simply organizing
them.  Because it is counsel's burden to provide
adequate descriptions, the Court finds that this entry
is clerical.  <u>I.T.</u>, 18 F. Supp. 3d at 1054 (agreeing
with magistrate judge that the description "review

clerical tasks were classified as paralegal tasks.

However, a clerical task is non-compensable, whether

billed at an attorney or paralegal rate.  Missouri v.

Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("Of

course, purely clerical or secretarial tasks should not

be billed at a paralegal rate, regardless of who

performs them.").

   Certain of the clerical tasks were block

billed[12] with a compensable task.  That is, counsel

included multiple tasks within a single time entry.[13]

Therefore, even though the entire time entry may not

have involved clerical tasks, the Court will recommend

exclusion of the entire entry because the use of block

billing precludes the Court from reasonably

---

exhibits" indicates that the activity was clerical or
ministerial in nature).

   [12]  The Court will discuss block billing in the next
section.

   [13]  For example, Mr. Black's 6/8 and 6/10/16 entries
about preparing declarations and exhibits would be
compensable as to the preparation of declarations, but
the inclusion of a clerical task (preparing exhibits)
within the same time entry precludes recovery of the
entire time entry because the Court has no way to
accurately apportion the time between tasks.

apportioning the time between the clerical task and the compensable task.  <u>I.T.</u>, 18 F. Supp. 3d at 1054 ("[I]n light of the fact that this Court cannot determine how much of the 2.3 hours attributed to the entry as a whole was spent on the legal services [versus clerical work], this Court agrees with the magistrate judge that the entire entry should be excluded as improper block billing.").  Based on its careful review of the timesheets, the Court recommends that the district court deduct 11.8 hours and 0.2 hours for clerical work completed at the paralegal rate and attorney rate, respectively.

          b.  <u>Block Billing</u>

          Counsel also utilized block billing.[14]  <u>See</u>, <u>e.g.</u>, Mr. Black's (attorney) 5/27/16 (under motions practice), 6/3/16 (under motions practice) and 10/16/16 (under post-trial motions) entries.  "The term 'block billing' refers to the time-keeping method by which

----

          [14]  As noted above, if a time entry was blocked billed and deficient for another reason, it was deducted in its entirety.

40

each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  Block billed entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  See also id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")).  Indeed, it is

41

challenging to assess the reasonableness of a time entry when it includes several tasks.

Counsel's use of block billing makes it difficult, if not impossible, for the Court to assess the reasonableness of the hours expended as to those entries. Hence, the Court finds it appropriate to impose an across-the-board reduction of 20% as to the entries that are in the "block billing" format. Gonzales, 729 F.3d at 1203 (citing Welch, 480 F.3d at 948 (affirming 20% cut to hours where fee applicant block billed, because court relied on third-party report that block billing increased number of hours by 10-30%)); Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc., No. CV 06-00663 JMS-BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block billed hours by 20%). The Court emphasizes that its proposed reduction applies only the block billed entries; the 20% reduction does not apply to all hours.

Mr. Black billed 18.3 hours in the block format. Applying the 20% reduction, the Court recommends that Mr. Black's attorney hours be reduced

42

by 3.66 for block billing.

### c.   Miscellaneous Reductions

Finally, the Court imposes two miscellaneous reductions.   The first reduction concerns Mr. Black's (attorney) 1/22/16 entry under case development ("E-mail process server regarding status").   This is more appropriately categorized as a paralegal task, as evidenced by the fact that he categorized his 1/28/16 entry with the identical description as a paralegal task.   The 0.1 hours will be deducted from the attorney hours and added to the paralegal hours.

The second reduction relates to work associated with the present Motion.   Mr. Black expended 0.1 hours for a meet and confer on 9/12/16, prior to the filing of this Motion.   However, the meet and confer process is supposed to occur after the filing of motions for attorneys' fees.   Local Rule 54.3(b) ("The moving party shall initiate this consultation after filing a motion for attorneys' fees and related non-taxable expenses.").   Mr. Black expended 0.4 hours for the

43

9/14/16 drafting of the statement of consultation, but given that the conferral process did not occur until 9/22/16, it is unclear how the drafting of the statement of consultation could have preceded the conference.  For these reasons, the Court deducts 0.5 attorney hours.

### 3.   Total Fee Award

After carefully reviewing Mr. Black's time entries, the Court finds that he reasonably expended 66.04 hours on attorney tasks and 5.4 hours on paralegal tasks.  When multiplied by the $260 and $100 hourly rates deemed reasonable above, the resulting fee award is **$17,710.40.**

## D.   Costs

Plaintiff requests $553.93 for the following costs:  filing fee, service of process, postage, and copying costs.  Other than its argument that the costs should be reduced by 90% for limited success, the CDC does not challenge specific requests or categories of costs.  The Court having already concluded that Plaintiff substantially prevailed, and finding that the

costs were sufficiently documented and reasonably incurred, it recommends that Plaintiff be awarded **$553.93** in costs.

CONCLUSION

In accordance with the foregoing, the Court RECOMMENDS that Plaintiff's Motion for Attorney's Fees and Costs, filed September 13, 2016, be GRANTED IN PART AND DENIED IN PART, and that Plaintiff be awarded **$17,710.40** in fees and **$553.93** in costs.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, January 31, 2017.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 16-00008 JMS-KSC; <u>CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC. V. CENTERS FOR DISEASE CONTROL & PREVENTION</u>; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS